***E-Filed 3/8/12***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERWOVEN, INC., | No. C 10-04645 RS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO STAY PENDING REEXAMINATION** |
| VERTICAL COMPUTER SYSTEMS, INC., | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Interwoven moves to stay all judicial proceedings pending the outcome of an *ex parte* reexamination of the two patents-in-suit. Interwoven insists a stay is warranted because defendant appears unprepared to litigate, a reexamination will likely modify the relevant issues, and no undue burden will result. Defendant Vertical objects, contending a stay would impose unreasonable delay without adequate assurances of meaningful simplification. It further argues that Interwoven's request is simply a dilatory tactic which will disadvantage Vertical insofar as meaningful discovery will be more difficult as time passes and the alleged infringement will continue in the interim. As there is little evidence a stay will either streamline or benefit the

1  litigation, Interwoven's motion is denied. This matter is appropriate for resolution without oral
2  argument pursuant to Civil Local Rule 7-1(b).

## II. BACKGROUND FACTS

### A. Procedural History

Vertical, a publicly-held provider of Internet technologies, owns the two patents-in-suit, United States Patent Nos. 6,826,744 (the '744 Patent) and 7,716,629 (the '629 Patent). In an effort to enforce its patent rights, Vertical brought an action against Microsoft Corporation in the Eastern District of Texas. After settling with Microsoft in January 2009, Vertical informed Interwoven that it believed the company's TeamSite products were also infringing Vertical's patents. After months of failed negotiations between the companies, Interwoven filed suit for declaratory judgment in this Court. Vertical contends that throughout these negotiations, Interwoven concealed information regarding the infringing product and purposefully delayed Vertical's investigations. Interwoven disputes these accusations, insisting it was Vertical who delayed initiating prosecution and neglected to complete its due diligence before making unfounded allegations.

Since the inception of this lawsuit, Interwoven has amended its complaint and Vertical has answered with a counterclaim for patent infringement. The parties have also begun discovery, fully briefed the issue of claim construction, and participated in a *Markman* hearing. Following this hearing, the Court issued a claim construction order largely rejecting Interwoven's limiting arguments and construing most of the contested terms according to their plain and ordinary meanings. Interwoven subsequently filed a request for *ex parte* reexamination of both patents-in-suit on January 6, 2012. The PTO granted reexamination of the '744 Patent, but has yet to determine whether to institute reexamination of the '629 Patent. Interwoven moves to stay these proceedings pending the outcome of reexamination.

### B. Relevant Facts

Both patents at issue concern an innovative method for interfacing program units through the use of "arbitrary objects." The '629 patent was issued from a continuation of the '744 patent application. After purchasing these patent rights, Vertical developed and began selling a product

called "SiteFlash" which incorporated the patents' technology. Vertical maintains "SiteFlash" was exceedingly successful until direct competitors, such as Interwoven, began infringing the patents-in-suit. This infringement allegedly diverted sales and profits from Vertical and drove "SiteFlash" out of the market. Vertical explains that Interwoven, a wholly-owned subsidiary of Autonomy Corporation plc, a subsidiary of Hewlett-Packard Company, specifically infringed the patents with its product, "TeamSite." Vertical claims it learned of Interwoven's infringement after investigating the company's products and reading "The Definitive Guide to Interwoven Teamsite." Interwoven contests this book's credibility and denies any patent infringement. To this effect, it filed suit seeking declaratory judgment of invalidity, unenforceability, and non-infringement of Vertical's two patents.

### III. LEGAL STANDARD

The decision to stay a patent case in the midst of a PTO reexamination rests within a court's discretion. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). A court is certainly not required to stay judicial resolution in light of a pending patent reexamination. *Id.* A stay may be useful, however, where the outcome of the reexamination would assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue. *See, e.g.*, *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."). In the reexamination context, district courts in the Ninth Circuit have relied on the following three factors to ascertain the appropriateness of a stay: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *In re Cygnus Telecom. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (*citing Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)); *ASCII Corp.*

*v. STD Entm't. USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994). Taken together, these factors weigh against a stay.

## IV.  DISCUSSION

### A.  <u>Undue Prejudice or Tactical Disadvantage</u>

Vertical insists granting a stay would merely impose unreasonable delay and create undue prejudice. It further impugns plaintiff's motion as a dilatory tactic designed to prolong the alleged infringing behavior. Specifically, Vertical emphasizes that Interwoven waited a year and three months into litigation to file for reexamination, only doing so after receiving the Court's claim construction order. This order notably rejected most of Interwoven's arguments, construing the majority of disputed terms according to their plain and ordinary meanings. That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy. *See Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781SBA, 2008 WL 4452118, *4 (N.D. Cal. Oct. 3, 2008) (distinguishing cases, for purposes of assessing undue prejudice, where a party requests reexamination only after receiving an unfavorable ruling by the court); *Fresenius Med. Care Holdings, Inc. v. Baxter Intern., Inc.,* No. C 03-1431 SBA, 2007 WL 1655625, *6 (N.D. Cal. June 7, 2007); *see also Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. 09-1635, 2009 WL 3078463, at *3 (N.D. Cal. Sept. 28, 2009) (finding prejudice existed where defendants waited five months to file for reexamination and did so after experiencing a halt in settlement negotiations). Interwoven's assertion that it waited until after claim construction in order to avoid filing multiple reexaminations is unpersuasive. The PTO is obligated to give claims their broadest interpretation at reexamination regardless of the judicially imposed construction. *See In re Am. Acad. of Science Tech. Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("[I]t is error for the Board to 'appl[y] the mode of claim interpretation that is used by courts in litigation, when interpreting the claims of issued patents in connection with determinations of infringement and validity.'" (quoting *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989))). Such evidence weighs against granting plaintiff's motion.

The parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice. *See Avago Tech. Fiber IP(Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–CV–02863–EJD, 2011 WL 3267768, at *16-*17 (N.D. Cal. July 28, 2011) ("[E]ven 'ordinary' competition can justify denial of a stay when that competition is based on alleged infringement and has effects that would be difficult to reverse after the fact."). Vertical argues that it was forced to take "SiteFlash" off the market due to the infringement of competitors such as Interwoven. If Vertical's allegations are true, and Interwoven is permitted to prolong such infringement pending reexamination, Vertical will continue to lose profits and sales. Admittedly, delay by itself does not necessarily constitute undue prejudice, as nearly every judicial stay involves delay. *See, e.g.*, *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice . . . ."). Yet, as discussed above, Interwoven's election to wait until after claim construction to seek reexamination raises the inference that the timing of the current request is tactically driven. *Id.* at 1111 (denying motion to stay because reexamination delay placed plaintiff at tactical disadvantage).

Furthermore, there is evidence to support Vertical's fear that it will not only be financially disadvantaged, but also strategically prejudiced by a stay. Evidence, witness availability, and memory concerning the pertinent timeframe will likely become more stale and difficult to retrieve as time passes. In short, adding additional years onto a case already past the claim construction stage is unreasonable and would place Vertical at a tactical disadvantage.

B. <u>Simplification of the Issues</u>

The second factor considers whether reexamination will significantly simplify or streamline the litigation. Emphasizing that the primary issues for litigation are patent validity and claim construction, Interwoven contends that no matter what the results of reexamination, they will likely simplify litigation. Specifically, it insists the outcome of reexamination will eliminate the need for complex discovery, dispositive motion practice, or another round of infringement and invalidity contentions. Interwoven provides little support for this proposition or for its hypothetical list of benefits. In fact, the evidence contradicts Interwoven, suggesting that simplification of issues is

No. C 10-4645 RS
ORDER DENYING MOTION TO STAY

unlikely to result. According to the parties' statistics, during reexamination the PTO cancels all claims in a patent between 11% and 12% of the time. Alternatively, it amends claims about 66% of the time. Naturally, Interwoven emphasizes both of these numbers, recognizing there is a greater than 75% chance the claims will either be modified or canceled. The potential for modification, however, lends little support to Interwoven's argument, especially as it relates to the simplification of infringement issues. This is because Interwoven filed motions for *ex parte*, not *inter partes*, reexaminations. Unlike *inter partes* reexaminations which "are guaranteed to finally resolve at least some issues of validity because the requesting party is barred from seeking district court review on any grounds that it could have raised reexamination," no such estoppel arises from *ex parte* reexaminations. *Avago Tech. Fiber IP(Singapore) Pte. Ltd.*, 2011 WL 3267768, at *4. Consequently, the only way Interwoven's requested reexaminations will resolve invalidity issues is if the PTO cancels the claims in their entirety, of which there is only a 12% chance. *Id.* (refusing to grant a stay because simplification is unlikely when the likelihood of PTO cancellation was low). Interwoven has not persuasively demonstrated that the results of reexamination will streamline the litigation such that a stay would be helpful.

### C. Procedural Posture of the Instant Case

The case is not, as defendants insist, in its infancy. Discovery is well underway and the parties are working towards an agreeable protective order. They have exchanged documents, excepting source code, served interrogatories and document requests, and responded to each other's requests and interrogatories. More importantly, the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order. *See Largan Precision Co. Ltd. v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 WL 794983, at *2 (N.D. Cal. Mar. 1, 2011); *Yodlee Inc. v. Ablaise Ltd.*, Nos. C-06-07222 SBA, 2009 WL 112857, at *4 (N.D. Cal. Jan. 16, 2009) ("The relevant inquiry here is the stage of the litigation, and the fact that no *Markman* hearing has occurred simply means that the case is less, rather than more, advanced."); *Research in Motion Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008) (granting a stay because

1  "no briefing on claim construction or dispositive motions have been filed"). Both the parties and the
2  Court have expended sufficient resources and time to render a stay untenable at this point.

## V. CONCLUSION

The decision to stay judicial proceedings in a patent case pending reexamination is discretionary. Often, a stay works as a logical and practical solution where the PTO effectively resolves much of the dispute that goes to the heart of patent litigation. For all the reasons explained above, this is not one of those cases. The defendants' motion for a stay must therefore be denied. A case management conference is scheduled for **May 24, 2012 at 10:00 a.m.** in Courtroom 3 on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

IT IS SO ORDERED.

Dated: 3/8/12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE