IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERWOVEN, INC., | No. CV 10-04645 RS |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| VERTICAL COMPUTER SYSTEMS, | |
| Defendant. | |

## I.   INTRODUCTION

On October 14, 2010, Interwoven, Inc. ("Interwoven") filed a Complaint seeking a declaratory judgment that the 6,826,744 ("the '744 patent") and 7,716,629 ("the '629 patent") patents held by Vertical Computer Systems ("Vertical") are invalid and unenforceable, or that no valid, enforceable claim within the patents-in-suit is infringed by plaintiff's software.  An Amended Complaint was later filed further seeking a declaration that the '744 patent and the '629 patent are invalid due to inequitable conduct before the United States Patent and Trademark

1  Office ("PTO") and enjoining defendant from prosecuting or instituting any action against
2  plaintiff claiming that the patents-in-suit are valid, enforceable, or infringed. Interwoven has
3  moved for summary judgment seeking: (1) a determination that the '744 patent is unenforceable
4  due to inequitable conduct based on the inventor's alleged failure to disclose prior art to the
5  PTO; (2) that the child '629 patent is infected by the unenforceability of the parent '744 patent,
6  or, in the alternative, that the '629 patent is not entitled to the earlier filing date of the '744
7  patent; and/or (3) that the patents are invalid under the 35 U.S.C. §102(b) on-sale bar. For the
8  following reasons, Interwoven's Motion for Summary Judgment is denied.

## II. BACKGROUND[1]

The technology in this matter involves a system for generating software applications in an "arbitrary object framework." Aubrey McAuley is the inventor, and Vertical is the owner of the '744 and '629 patents at issue in this suit. The '744 patent application was filed on October 1, 1999 and granted on November 30, 2004. The '629 patent is a continuation application filed on November 29, 2004 and granted on May 11, 2010. McAuley drafted the specification for the application and initially provided four drawings that now appear as Figures 1 through 4. Before filing the '744 application, Figure 5 was added, describing an "embodiment" of the invention. Figure 5 depicts a number of features of McAuley's prior art WebOS product and was not created for the patent application. McAuley's Company, Adhesive, had been marketing and selling its WebOS lines of products since as early as 1996. The WebOS User's Guide, provided to McAuley's customers, is dated June 9, 1998.

In 2007, Vertical filed an action for infringement against Microsoft in the Eastern District of Texas. Microsoft answered the complaint and counterclaimed for inequitable conduct, alleging that Figure 5 showed a prior art system that was available more than one year before the

---

[1] Facts are drawn from the First Amended Complaint, Motion for Summary Judgment, Opposition, and Reply. Vertical objects to Interwoven's Exhibits A-1 through A-5, referring to chapters of "The Complete Idiot's Guide to Microsoft Visual InterDev," and arguments in the Reply brief that allege Vertical did not disclose the WebOS system to the PTO. The Court has not relied on Exhibits A-1 through A-5 in coming to its decision. Whether the WebOS system was disclosed appears to be a fact in dispute, and thus not an appropriate basis on which to grant summary judgment.

filing date of the '744 patent application and was not an embodiment of the present invention. It also alleged that McAuley should have submitted Figure 5 as prior art. After settling with Microsoft, while the application for the '629 patent was pending, McAuley and Vertical changed the label of Figure 5 on the '629 patent to describe an "environment," rather than an "embodiment" of the invention. They claim the original word choice was merely a typographical error that they felt wasn't necessary to change in the '744 patent. Additionally, McAuley and Vertical state they disclosed as prior art a description of the WebOS system, from which Figure 5 originated, and documentation of the WebOS system to the PTO. Interwoven disputes that the WebOS system was ever disclosed to the PTO during the prosecution of the '629 patent, saying the bits and pieces of documentation referring to WebOS could not provide the public with notice and thus are insufficient to constitute a disclosure. During the prosecution of the '629 patent, McAuley and Vertical also selectively disclosed to the PTO twenty-four pieces of the over 60 pieces of prior art that had been identified over the course of the Microsoft litigation. The PTO did not apply the WebOS reference to the claims of the '629 patent in granting it.

The present case was filed in 2010. Following the 2011 Claim Construction Order issued by this Court, Interwoven filed petitions for reexamination of the '744 and '629 patents, but did not cite to the WebOS materials in its requests, nor seek to change the "typographical error" in the '744 patent referring to "embodiment" rather than "environment." The PTO undertook the requested reexaminations. It subsequently issued a reexamination certificate for the '629 patent and a notice of intent to issue a reexamination certificate for the '744 patent.

It is undisputed that, during the prosecution of the '744 patent, the inventor never disclosed the WebOS system to the PTO. As a result, the PTO did not know that the WebOS product, from which Figure 5 was taken, was on sale and available to the public more than a year before filing the application leading to the '744 patent. Vertical states Figure 5 does not disclose the inventions of the '744 or '629 patents and that the references to Figure 5 in those patents do not discuss the claimed subject matter or the arbitrary objects, the claimed advance in the

1 patents-in-suit. It asserts that the prior art references cited by the examiner in the '744 patent
2 show similar systems and are thus cumulative to Figure 5, as they make essentially the same
3 disclosure. According to Vertical, the WebOS system from which the diagram was taken did not
4 include arbitrary objects. Rather, the system suffered from the very inefficiencies arbitrary
5 objects are intended to fix. Vertical avers that it was not until Version 7 of WebOS was
6 introduced between 1999 and 2001, that the system utilized arbitrary objects.

Interwoven insists nonetheless that the WebOS product is material prior art of which McAuley was aware and the existence of which he should have disclosed to the PTO upon filing his application for the '744 patent. It contends Vertical's position is contradictory: if it were true that the WebOS product is unrelated to the patented invention, Figure 5 would be an irrelevant diagram that should not have been included in the patent application. If the WebOS drawing is part of the patented subject matter, on the other hand, it was on sale before the filing of the patents-in-suit, rendering the patents invalid pursuant to the on-sale bar. Moreover, Interwoven contends Figure 5 is not cumulative, as it discloses an object manager managing objects of various types in an object library that no other figure depicts. Interwoven concludes that, had the PTO known the WebOS product or its derivatives had been sold and in public use prior to the filing of the '744 application and that a diagram of the WebOS product depicted an embodiment of the invention, the patent would not have been granted.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See*

*also Celotex*, 477 U.S. at 323. A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255.

### B. Inequitable Conduct

Inequitable conduct is a defense to patent infringement arising out of the doctrine of unclean hands. To stem the tide of inequitable conduct claims, the Court of Appeals for the Federal Circuit recently articulated a new, heightened standard for an inequitable conduct defense. *See Therasense v. Becton Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011). To prevail on a motion for inequitable conduct, a party must show that "the patentee acted with the specific intent to deceive the PTO." *Id.* at 1290 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1365, 1366 (Fed. Cir. 2008)). A finding of gross negligence or that the patentee "should have known" is not sufficient. *Id*. (citing *Kingsdown*, 863 F.2d at 876). Rather, there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference. *Id.* A sliding scale should not be used in making a finding of intent and materiality, nor can intent be inferred from materiality. *Id.*; See also *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008) (explaining that "a showing of materiality alone does not give rise to a presumption of intent to deceive."). Nevertheless, because evidence of direct intent is rare, intent may be inferred from indirect and circumstantial evidence. *Id.* (citing *Larson Mfg. Co. of S.D., Inc., v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009)). To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference to be drawn from the evidence. *Id.* (citing *Star*, 537 F.3d at 1366).

The materiality required to establish inequitable conduct is "but-for" materiality. *Id*. at 1291. When an applicant fails to disclose prior art, it qualifies as "but-for" material if the PTO would not have approved a claim if it had been aware of the prior art. *Id.* To determine whether

the PTO would have issued the patent, a preponderance of the evidence standard applies, giving the claims their broadest possible construction. *Id.* at 1291-92. An exception to the "but-for" materiality standard exists for acts of affirmative egregious misconduct. *Id.* at 1292. One example of such misconduct is the filing of an unmistakably false affidavit. *Id*. (citing *Rohm & Haas Co. v. Chrystal Chem. Co.* 722 F. 2d 1556, 1571 (Fed. Cir. 1983).

The remedy for inequitable conduct is the "atomic bomb" of patent law. *Id.* at 1288. This is because, unlike invalidity defenses which render individual claims invalid, inequitable conduct makes the entire patent unenforceable and can infect related patents and applications in the same technology family. *Id.* Because it is an equitable doctrine, inequitable conduct should only be found in instances where the patentee's misconduct resulted in an unfair benefit from the unwarranted claim. *Id.* at 1292.

C. <u>On-Sale Bar</u>

The on-sale bar prevents a person from acquiring a patent if the invention was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §102(b). This serves as a limiting provision, both excluding ideas that are already in the public domain from patent protection and confining patent protection to the statutory term. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 64(1998). The Supreme Court has articulated a two-part test to determine whether the on-sale bar applies: (1) the product must be the subject of a commercial offer for sale; and (2) the invention must be ready for patenting. *Id.* at 67. To overcome the presumption of validity, a challenger must demonstrate these factors by clear and convincing evidence. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 846 (Fed. Cir. 2010).

To meet the first prong, the Federal Circuit has held that "the invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent, though it may do so inherently." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1329 (Fed. Cir. 2001). Nevertheless, it is not necessary to show that all embodiments were on sale more than one year before the date of filing. *Id.* at 1330. The second condition may be satisfied by either proof of

reduction to practice before the critical date or by proof that the inventor had, prior to the critical date, described the invention in sufficient detail to enable a person skilled in the art to practice it. *Id.* at 67-68.

## IV. DISCUSSION

*Specific Intent*

Inventor McAuley declares he prepared the entire patent application himself. Originally, he included the diagrams now labeled as Figures 1-4. When his patent attorney told him the application needed more diagrams, he provided the WebOS diagram for inclusion as Figure 5. There is no dispute that the drawing was a pre-existing diagram and was not created for the patent application. McAuley maintains that he did not think the diagram was important to the invention, and thus had not included it in his original submission. He further maintains that, at the time he drafted the application, he did not appreciate the precise meaning that "embodiment" has in patent law. As a result, he and his lawyer failed to catch what he alleges to be a typographical error in the description of the diagram.

Interwoven contends that McAuley "should have been aware he needed to disclose his prior art WebOS product" to the PTO during prosecution of his '744 patent. The inquiry into what McAuley "should have" known, however, is irrelevant to the question of inequitable conduct. Under the heightened intent requirements articulated by the Federal Circuit in *Therasense*, Interwoven must show that McAuley made a deliberate decision to withhold a known material reference. Interwoven has not met its burden. It presents no evidence from which such deliberation can be inferred. Rather, the evidence proffered could suggest just as easily that McAuley was mistaken, or at worse negligent, in his decision to disclose certain pieces of prior art, but not his WebOS product.

Interwoven argues McAuley and Vertical's behavior once the alleged error was discovered is sufficient to infer intent to deceive the PTO. Specifically, Interwoven notes Vertical chose to disclose WebOS during the prosecution of the '629 patent, but failed to correct its disclosure for the '744 patent. It claims that hiding the WebOS product itself during the

prosecution of the '744 patent can only be explained as specific intent to mislead the PTO. In support of this argument, it relies on *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012), in which the court deemed selective concealment of prior art as sufficient to find specific intent. Unlike the present case, however, *Aventis*, was decided after a trial on the merits, not at the summary judgment stage. The court concluded that the inventor's testimony for withholding select prior art was simply not credible. *Id.* at 1235-36. Here, by contrast, McAuley's declarations that he maintained an honest belief the WebOS product was not relevant to the patent has yet to be subject to examination. McAuley's intent remains a fact that must be found by the trier of fact. It is enough to defeat summary judgment that a question remains as to the inventor's credibility.

Interwoven further asserts that Vertical never disclosed the WebOS Manual to the PTO, indicating an intent to deceive. As noted above, it is undisputed that the product was not disclosed during the prosecution of the '744 patent, but Vertical disputes the contention that the WebOS product was not disclosed during the prosecution of the '629 patent. Interwoven insists that, from the perspective of the PTO, the disclosure of the *The Complete Idiot's Guide to Microsoft's Visual InterDev* was completely unrelated to the WebOS product. It is difficult, if not impossible, however, to determine how the PTO interpreted the disclosures Vertical provided. The Guide did refer to the WebOS product. It would thus be a stretch to conclude that the PTO did not consider them in coming to its decision to issue the '629 patent. While Interwoven accuses Vertical of assuming the WebOS system was disclosed and making "an erroneous leap in logic" that only references specifically cited in the claims are material, Interwoven is guilty of similar assumptions and leaps in concluding, as a matter of law, that the WebOS system was not disclosed and that it is materially relevant to the claimed invention.

Interwoven next points to McAuley's refusal to explain the claimed invention to opposing counsel during his deposition as evidence of deceptive intent. It cites *Advanced Magnetic Closures, Inc. v. Rome Fasteners*, 607 F.3d 817, 830-31 (Fed. Cir. 2010), to support the proposition that deceptive intent can be premised on the inventor directing opposing counsel

to read the patent, rather than explaining the invention himself. In that case, the question was whether the named inventor was the exclusive inventor. *Id.* at 828. The court, after trial, found, among other things, the named inventor was 1) either unable or unwilling to articulate his claimed invention, 2) could not offer any scientific or technical explanation of his own patent, and 3) offered evasive, argumentative, and sometimes contradictory testimony regarding his status as the inventor. *Id.* at 830. The court thus concluded that his testimony bore indicia of fabrication, and that the single most reasonable inference was intent to deceive the PTO. *Id.* While it is true that, during his deposition, McAuley refused to elaborate on the information contained within the specification of the patents-in-suit, the question of inequitable conduct in this case has nothing to do with McAuley's familiarity with the claimed invention. Indeed, it is undisputed that he wrote the initial drafts of the patent application himself. Whether or not McAuley was willing to expand upon the language set forth in the patent seems more a question of litigation strategy than an indication of inequitable conduct before the PTO. Thus, specific intent cannot be unambiguously inferred from any refusal to answer opposing counsel's questions.

*Material Prior Art*

Interwoven makes much of the fact that the inventor conceded Figure 5 depicts a number of features of his prior WebOS product, including its ability to handle data objects, logic objects, formatting objects and variables using an object manager, and an object library. Interwoven contends that these features correspond to those of the patents-in-suit as disclosed in the '744 specification. Vertical counters by arguing that Figure 5 has nothing to do with arbitrary objects, which are the most significant aspect of the claimed invention. Figure 5, McAuley insists, has the same framework as the claimed invention, but the introduction of arbitrary objects changed everything about the way the product worked. It was not until the introduction of WebOS Version 7 around 2001, then renamed SiteFlash, that the WebOS program adopted the improvements described in Vertical's patent application.

During Claim Construction, this Court noted that "the innovation of the patents is the ability to separate form from function from content, but such separation is not required in every instance." This Court construed an "arbitrary object" to be "an object that can be created independently by individual preference, are interchangeable, and that may be, but need not be, accessed solely by name, the object being an entity that can have form, content, or functionality or any combination of form, content and functionality." While arbitrary objects and the ability to separate form, content, and function were the focus of claim construction, Figure 5 does not specifically reference any of these elements. Thus, Figure 5 does not, by its terms, encompass the elements of the claimed invention. Interwoven, however, observes that a claimed advantage of the invention is that it allows for personalization and profiling. It points out that this feature is depicted only in the piece of Figure 5 labeled "User Profile and Password Database **70**." This improvement, however, appears only in the description of the invention, not in the claims themselves. Thus the reference contained in Figure 5 indeed may not be relevant to the claimed aspects of the invention. In any event, it cannot be said at this stage that, as a matter of law, the depicted improvement is "but for" material to the claimed invention.

Nevertheless, Interwoven contends that because the diagram was put forth as an embodiment of the invention, the WebOS product is "clearly material prior art." Embodiments, however, need not be covered by the claims of the patent. *See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) (noting that, "read in the context of the specification, the claims of the patent need not encompass all disclosed embodiments. [*citation omitted*] Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991) (explaining that "subject matter disclosed but not claimed in a patent application is dedicated to the public."). Accordingly, the mere labeling of the diagram as an "embodiment" is insufficient to make the reference per se material.

Interwoven insists Vertical's explanation that the use of the word "embodiment" rather than "environment" was merely a mistake is implausible. Nevertheless, it contends that, even if

WebOS had been accurately labeled as an "environment" in the '744 patent, as it is in the '629 patent, its disclosure would still have been materially relevant to the PTO's determination. Interwoven premises this assertion on the assumption that WebOS was never disclosed to the PTO as prior art. Vertical, however, disputes that assumption, arguing it did in fact disclose the WebOS product following the Microsoft litigation while the prosecution of the '629 patent was still pending. The issue of disclosure therefore remains in dispute. Moreover, Interwoven conceded at oral argument that, had Figure 5 been labeled as an "environment" in the '744 patent, it would have no claim for inequitable conduct. Rather, it would only have potential claims of invalidity. The question of whether WebOS is material with respect to an "environment" of the claimed invention is therefore not relevant to a determination of inequitable conduct.

Vertical points out that Interwoven did not use the WebOS material in its request for reexamination of the patent. It contends that this is evidence Interwoven itself did not believe its assertion that WebOS and Figure 5 are material to the patents-in-suit, and that it knew the PTO had considered the WebOS disclosure and not found it material. At oral argument, Interwoven responded to this contention by saying it was not obligated to present all alleged prior art during the reexamination process, and that it wanted to preserve the WebOS issue for trial. While true that there is no requirement all prior art be presented at reexamination, this response cannot hold water. The PTO determines materiality in the first instance; the courts are a last resort. If the PTO had concluded the omission of WebOS as a prior art reference was material, this entire litigation would have been avoided. Thus, to suggest Interwoven was holding the reference in its back pocket for trial is nonsensical. Had it believed Figure 5 and the WebOS product to be materially relevant to the validity of the patents-in-suit, it should have sought such a determination from the PTO during their reexamination.

*On-Sale Bar*

The '744 patent was filed on October 1, 1999. Thus, the critical date is October 1, 1998. If the claimed invention was on sale before this critical date, the patent is invalid under the on-

sale bar doctrine. There is no dispute that the WebOS product was on sale well before this critical date. Nevertheless, there is dispute as to whether that product anticipated or rendered obvious the claimed invention. "The on-sale bar is evaluated on a claim-by-claim basis, so that some claims of a patent may be found to be barred while others are not." *Allen Engineering Corp. v. Bartell Indus.*, 299 F.3d 1336, 1353 (Fed. Cir. 2002). Thus each claim of the patents-in-suit must be construed and specific findings of fact must link elements of the product on sale to each claim limitation. *Id.* at 1355.

As discussed above, it is the challenger's burden to prove, by clear and convincing evidence, that each element of the claimed invention was on sale prior to the critical date. Interwoven has not met this burden. Rather, it states generally that the WebOS product embodies the claimed invention. This statement depends on the fact that Figure 5, originating from the WebOS manual, is labeled as an "embodiment." However, as discussed, there is dispute as to whether Figure 5 actually is an embodiment of the invention, or if such labeling was merely a typographical error. Interwoven does not identify the specific claims allegedly anticipated or rendered obvious by the sale of the early versions of the WebOS product. Without such specific claims, the on-sale bar cannot be adequately evaluated. Thus, on the evidence presently available, the patents-in-suit do not fail by virtue of the on-sale bar.

## V. CONCLUSION

For the foregoing reasons, Interwoven's Motion for Summary Judgment with respect to inequitable conduct before the PTO, and invalidity due to the on-sale bar, is denied in its entirety.

IT IS SO ORDERED.

Dated: 1/4/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE