IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

INTERWOVEN, INC.,

                Plaintiff,

   v.

VERTICAL COMPUTER SYSTEMS,

                Defendant.

_____/

No. CV 10-04645 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO EXCLUDE GEMINI'S TESTIMONY; AND GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE MALY'S TESTIMONY**

I.      INTRODUCTION

On October 14, 2010, Interwoven, Inc. ("Interwoven") filed a Complaint seeking a declaratory judgment that the 6,826,744 ("the '744 patent") and 7,716,629 ("the '629 patent") patents held by Vertical Computer Systems ("Vertical") are invalid and unenforceable, or that no valid, enforceable claim within the patents-in-suit is infringed by plaintiff's software. An Amended Complaint was later filed further seeking a declaration that the '744 patent and the '629 patent are invalid due to inequitable conduct before the United States Patent and Trademark

Office ("PTO") and enjoining defendant from prosecuting or instituting any action against plaintiff claiming that the patents-in-suit are valid, enforceable, or infringed.  Interwoven previously moved unsuccessfully for summary judgment on the basis of inequitable conduct and the on-sale bar.  *See* Dkt. No. 158.  Interwoven has again moved for summary judgment, this time arguing: (1) the accused products do not infringe, literally, indirectly, or under the doctrine of equivalents, any of the asserted claims of the patents-in-suit; and (2) Vertical cannot recover any damages, either under a lost profits or reasonable royalty theory.  Interwoven has also moved to exclude the expert testimony of Joseph Gemini and John Maly and, in its reply briefs, to strike portions of the declarations of John Maly, Luiz Valdetaro and Aubrey McAuley.[1]  Vertical was afforded the opportunity to file a surreply in response to Interwoven's motions to strike.  For the following reasons, Interwoven's Motion for Summary Judgment is granted in part and denied in part.  Interwoven's motion to exclude John Maly's testimony is granted in part and denied in part.  Interwoven's motion to exclude Joseph Gemini's testimony is denied.

## II.      BACKGROUND

### 1.   *The Patents-in-Suit*

This case involves allegations of infringement of both method and apparatus claims.  The technology in this matter involves a system for generating software applications in an "arbitrary object framework" that involves creating, interchanging, and managing arbitrary objects.  The 2011 Claim Construction Order issued by this Court, defined an "arbitrary object" as: "an object that can be created independently by individual preference, are [sic] interchangeable, and that

---

[1] Interwoven filed portions of these motions under seal.  Interwoven and Vertical additionally filed entire expert declarations, reports, and depositions under seal.  In support of these motions to seal, the parties declare that these documents have been designated as "highly confidential" pursuant to the parties' protective order.  This broad act of sealing is impermissible under Civil Local Rule 79-5, which requires that a sealing request be "narrowly tailored to seek sealing only of sealable material," and makes clear that a "blanket protective order" does not serve as a sufficient justification for filing documents under seal.  This Order makes reference to materials that have been filed under seal, but which the Court has determined do not require such protection.  All motions to seal in conjunction with the pending motions are hereby denied due to their extreme over-breadth, without prejudice to re-filing the motions in accordance with the standards set forth in Civil Local Rule 79-5.  Any revised motion to seal must be filed within twenty (20) days of the date of this Order.  If no such motion is filed within that time, unredacted copies of all documents currently filed under seal must be filed and made public.

For the Northern District of California

1  may be, but need not be, accessed solely by name, the object being an entity that can have form,

2  content, or functionality or any combination of form, content and functionality." Dkt. No. 83 at

3  17-18.

4      During the *ex parte* reexamination of the '744 patent, Vertical emphasized that "arbitrary

5  objects of any type can also be readily replaced with another arbitrary object of <u>another type</u>, *i.e.*,

6  arbitrary objects are interchangeable, or swappable, with each other, <u>regardless of type</u>." Vakil

7  Decl. Ex. D. at 14 (emphasis in original). It did so to emphasize the differences between the

8  '744 patent and prior art, which entailed "classic objects" that cannot be called by name only and

9  are not interchangeable with other objects of different types. *Id.* During reexamination of the

10  '629 patent, the Examiner stated "[prior art is] not *callable by name only*" and on that basis

11  confirmed the patentability of the recited claims. Dossas Decl. Ex. 23.

12      Prior to the issuance of the '744 patent on November 30, 2004, Vertical sold five copies

13  of SiteFlash, the product in which Vertical practiced the patents-in-suit, to five separate

14  customers. *See* Vakil Decl. Ex. H at 7. There is no evidence that Vertical sold any SiteFlash

15  products after the issuance of the '744 patent in 2004. Vertical learned of the allegedly

16  infringing TeamSite product through a book titled "The Definitive Guide to Interwoven

17  TeamSite," authored by two employees of Federal Express, a purchaser of the TeamSite product.

18  TeamSite is a "content management platform to manage authoring, site design and layout,

19  workflow and approval, archiving and content tagging." Vakil Decl. Ex. H at 8.

20      *2. John Maly*

21      Vertical retained John Maly as a technical expert to assist in the investigation of possible

22  infringers. Maly has provided an expert opinion for Vertical on the questions of literal

23  infringement, infringement under the doctrine of equivalents, and indirect infringement. In

24  coming to his conclusions, Maly relied on five sources of documents, reflecting different

25  versions of the accused product. Maly also helped to prepare the claim charts for this case, and

26  reviewed the deposition testimony of Interwoven's designated experts. Maly concludes that

27  Interwoven literally infringes several claims of both the '744 and '629 patent, any differences are

28

insubstantial and equivalent, and Interwoven indirectly infringes these claims by inducing others to practice them. Dossas Decl. Ex. 5 ¶ 74.

### 3. Joseph Gemini

Vertical retained Joseph Gemini to assist in its damages assessment. Gemini is a Certified Public Accountant licensed in the State of Illinois for over 25 years, and has testified in many cases, including patent cases. Gemini prepared two reports on damages for this case. In preparation of those reports, Gemini considered various documents in evidence and had discussions with Luiz Valdetaro, the Chief Technical Officer of Vertical. Gemini concludes that: (1) Vertical is entitled to lost profits on all of Interwoven's post-November 29, 2004 sales of its "TeamSite Product"; and (2) alternatively, Vertical is entitled to a royalty of nine percent of Interwoven's total revenue. Dossas Decl. Ex. 7 ¶¶ 66, 75.

Gemini's first report, based on Interwoven's total invoice amounts, asserted that "total accused product sales" were $765.9 million over the period from January 1, 2006 through January 31, 2012. Vakil Decl. Ex. A at 12. In Gemini's supplemental report, he provided a revenue base of $201.1 million in sales over the period from December 2004 to February 2013, comprising sales of TeamSite and LiveSite from December 1, 2004 through February 8, 2013. Vakil Decl. Ex. K at 8.

Gemini relied on "the Basix1 Agreements" to obtain a foundational royalty rate, that he then adjusted using the *Georgia-Pacific* factors. Dossas Decl. Ex. 7 ¶¶ 44-54. Chuck Kensicki, the president of Basix1 when the Basix1 Agreements were executed, was at the same time the director of Now Solutions and GIS, both of which were wholly-owned subsidiaries of Vertical. *Id.* ¶44. There were no sales through the Basix1 Agreements, and Vertical thus did not receive any money under them.

### III.    LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  If the movant succeeds, the burden then shifts to the nonmoving party to "set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  *See

also Celotex*, 477 U.S. at 323.  A genuine issue of material fact is one that could reasonably be

resolved in favor of the nonmoving party, and which could affect the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the evidence in

the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

*Id.* at 255.

    B.  Exclusion of Witness Testimony

    Under Rule 702 of the Federal Rules of Evidence, a witness qualified as an expert may

testify in the form of opinion or otherwise if: "(a) the expert's scientific, technical or specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the witness has applied the principles and methods

reliably to the facts of the case. Fed. R. Evid. 702.  Expert testimony that is unreliable or

irrelevant must be excluded under Rule 702.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579, 589 (1993).

    The decision on whether to admit expert testimony is "within the discretion of the trial

court." *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).  The

Rule 702 inquiry into the reliability of an expert's testimony is flexible and must be tied to the

particular facts of a case.  *Id.*; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315

(Fed. Cir. 2011) (excluding expert testimony because patentee failed to tie expert's theories,

which were based on flawed methodologies, to facts).  In a patent case, admission of expert

testimony in accordance with *Daubert* must follow the law of the circuit in which the district

court sits.  *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

*Daubert* lists factors to consider when undertaking this gatekeeping determination, including, but not limited to: "(1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential error rate, and (4) whether it is generally accepted in the scientific community." *Wagner v. Cnty. of Maricopa*, 673 F.3d 977, 989 (9th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94) (internal quotations omitted)).   Ultimately, the purpose of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F.Supp.2d 1092, 1098-99 (N.D. Cal. 2011) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (*quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

Nevertheless, "expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  Accordingly, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Id.* at 564; *see also Implicit Networks, Inc. v. F5 Networks, Inc.*, C-10-3365 SI and C-10-4234 SI  2013 WL 1007250 (N.D. Cal. Mar. 13, 2013) (finding in a patent infringement case that the "deficiencies" in an expert's testimony "go to the weight a jury might give [the expert's] conclusions and not their admissibility.").

## IV.    DISCUSSION

### A.  Infringement

#### a.  Request for Clarification of Claim Construction Order

Interwoven asserts that clarification of the scope and meaning of "interchangeability" in this Court's construction of "arbitrary object" is required to resolve a dispute of law that has

For the Northern District of California

For the Northern District of California

1  arisen between the parties.  Specifically, Interwoven asks that the construction make clear an

2  arbitrary object must be interchangeable with an arbitrary object of a *different* type.  It contends

3  that this clarification will be dispositive, as the accused TeamSite products lack this ability.

4  Vertical disputes that any clarification is necessary under *02 Micro Int'l Ltd. v. Beyond*

5  *Innovation Tech. Co.*, 521 F.3d 1351 (2008).  Unlike in *O2 Micro*, in which the disputed term

6  had not been construed during claim construction, here the term in dispute affirmatively was

7  construed. Thus no argument of waiver is appropriate.  *See id.* at 1358-60.[2]

8       During claim construction, whether an arbitrary object must be "interchangeable" was the

9  subject of fundamental disagreement.  Dkt. 83 at 13.  Interwoven insisted that the prosecution

10 history required the arbitrary objects in Vertical's patent to be interchangeable, otherwise it

11 would be indistinguishable from prior art.  *Id.*  Vertical, to the contrary, insisted that the patent

12 language merely permitted but did not mandate that arbitrary objects be interchangeable.  *Id.*

13 Under the Claim Construction Order the "assertion that arbitrary objects 'can be easily replaced'

14 means that they must have this attribute" and must therefore be interchangeable.  *Id.* at 15.  In

15 coming to that conclusion, the distinction from prior art that an arbitrary object "of any type can

16 readily be replaced with another arbitrary object of <u>another type</u>" was persuasive.  *Id.* at 13.

17 (emphasis in original).  It follows that, while not necessary that an arbitrary object be replaced

18 with an object of a different type in every instance, the claimed language requires that a product

19 falling within the reach of the patent have the *capacity*, but is not required, to exchange one

20 arbitrary object for an object of another type.

21        *b.  Summary Judgment*

22      Vertical relies on the report and testimony of its technical expert, John Maly, to avoid

23 summary judgment on its claims of infringement under the doctrine of equivalents.  Maly opines

24 that Interwoven's TeamSite product infringes, directly, under the doctrine of equivalents, and

25 indirectly, on Vertical's patents.

26

27   [2] In addition, Vertical argues that Interwoven's request amounts to an impermissible motion for reconsideration under Civil Local Rule 7-9.  Notwithstanding that objection, this Order interprets

28 Interwoven's request as a valid request for clarification.

1.   Direct Infringement

To prove direct infringement with respect to method claims, the patentee must show that the accused infringer has performed all of the steps in the claimed method. *See Mirror Worlds*, 692 F.3d at 1359.  Interwoven insists that Vertical's only expert on the topic, Maly, has not done so, but rather has provided a conclusory opinion that the TeamSite Product directly infringes each of the asserted claims.  Maly's declaration, however, goes into detail as to how Interwoven's TeamSite product functions. *See* Dossas Decl. Ex. 5 ¶¶ 40-73.  More specifically, Maly explains why he believes TeamSite is an arbitrary object framework, uses arbitrary objects managed in libraries, and creates final websites or applications.  Maly additionally provides examples of how TeamSite functions in these ways.  Based on this analysis he concludes the TeamSite product literally infringes claims 2-11, 16-19, 21-25, 27-33, 38-41 and 56-57 of the '744 patent and claims 1-6, 8-17, 19-26, and 28-32 of the '629 patent. *Id.* at ¶ 74.  Nevertheless, Interwoven argues Vertical cannot point to any evidence that any of the elements found in TeamSite are arbitrary objects that are interchangeable with objects of different types.  Maly has, however, provided four examples of what he concludes to be infringement.[3]  Specifically, Maly provides evidence that "buttons" of different object types may be interchanged.  Maly declares that TeamSite has the ability to create buttons that contain different combinations of form, content, and functionality.  Dossas Decl. Ex. 5 at ¶96.  Whether or not TeamSite actually has this ability, and whether such buttons satisfy the definition of "interchangeable" provided in the Claim Construction Order and again provided above, is a question of fact that must be submitted to the jury.  It follows that Interwoven's motion for summary judgment on the issue of direct infringement must be denied.

2.   Doctrine of Equivalents

Under the doctrine of equivalents, "a product or process that does not literally infringe … the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented

---

[3] As discussed more fully *infra* with respect to Interwoven's Motion to Exclude portions of Maly's testimony, these examples need not be excluded.

For the Northern District of California

invention." *Werner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "[A]n element in the accused product is equivalent to a claim limitation if it performs substantially the same function in substantially the same way to obtain substantially the same result." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008). "[T]he doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole." *Werner-Jenkinson*, 520 U.S. at 29.

With respect to the doctrine of equivalents, Maly's Report concludes, "if any difference is found between any claim element and the corresponding element in the TeamSite product, the difference is insubstantial and the equivalent element performs the same function to achieve the same result in the same way." Vakil Decl. Ex. A. at 23. This, Interwoven argues, merely parrots the language of the doctrine, without any analysis or explanation of the claims themselves. Vertical counters that the same analysis conducted for literal infringement was conducted under this alternative theory, and that Maly has shown there are no differences between the accused products and the patents-in-suit. Accordingly, it concludes, the discussion of equivalents is hypothetical, as no differences were found.

It appears Maly found it unnecessary to go into greater detail on the doctrine of equivalents as, once literal infringement is proven, the analysis ends. *See Transmatic, Inc. v. Gulton Idus.*, 53 F.3d 1270, 1275 (Fed. Cir. 1995). The evidence shows Maly thought the products were "so close" from when he first started reading the patent, that a complete separate analysis was not necessary. Vakil Dec. Ex. B. at 187. While this may be true, such an assumption provides no evidence on which to base a finding of infringement under the doctrine of equivalents. Rather, it indicates Maly believes there is direct infringement, not infringement under the doctrine of equivalents. *See, e.g., Rambus v. Hynix Semiconductor Inc.*, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008). The doctrine of equivalents is not designed to give a patentee a second shot at proving infringement to the extent that any limitation is not found to be literally present. *Id.* To withstand summary judgment, Vertical must show that each element of the accused product functioned in a similar way to achieve a similar result as the patented

invention.  Such a showing requires at least a minimal discussion of the elements of the invention, a discussion which is lacking here.

Contrary to Vertical's assertion, it is not Interwoven's burden to disprove infringement under the doctrine of equivalents by pointing out differences between its products and the patented product.  Rather, as the patentee, it is Vertical who bears the burden to provide, on a limitation-by-limitation basis, particularized testimony and a "linking argument" to create a genuine issue as to equivalents in opposition to Interwoven's motion for summary judgment. *AquaTex Industries v. Techniche Solutions*, 479 F.3d, 1320, 1328-29 (Fed. Cir. 2007). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice."  *Id.* at 1328 (*quoting Texas Instruments, Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558 (Fed.Cir.1996)).  Maly has not provided anything more than broad generalizations as to the similarity between Interwoven's accused products and Vertical's patented methods and apparatus.

John Maly fails to identify any element of the accused product that might function in substantially the same way to achieve substantially the same result.  As Vertical offers no other expert or additional evidence on that question, it fails to provide substantial evidence of infringement through the doctrine of equivalents such that a material question of fact remains in dispute.  Accordingly, summary judgment in favor of Interwoven must be granted with respect to infringement through the doctrine of equivalents.

### 3. Indirect Infringement

In addition to alleging direct infringement, Vertical alleges Interwoven indirectly infringed its patents by inducing its customers to practice the claimed invention.  Inducement of infringement requires a showing of an underlying act of direct infringement.  *Mirror Worlds*, 692 F.3d at 1360 (*citing Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1356 (Fed. Cir. 2004)).  Additionally, the accused infringer must have possessed the "specific intent to encourage another's infringement."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d, 1301, 1308 (Fed. Cir. 2012).  No such act of direct infringement by any third party has been

shown.  Moreover, Maly has provided no evidence with respect to Interwoven's intent or knowledge, as is required to find indirect infringement by inducement.  Rather, the entirety of Maly's Report as it relates to indirect infringement is as follows: "It is also my expert opinion that Interwoven induces others to practice the patented invention and contributes to others infringing the patented invention.  Interwoven induces others to infringe through their advertising and educational programs, and it contributes to others infringing by providing updates, software support and fixes."  Vakil Decl. Ex. A at 11; Dossas Decl. Ex. 5 ¶ 74.  This conclusory opinion, unsupported by any specific facts, is insufficient to maintain a claim of indirect inducement.  Accordingly, summary judgment must be granted in favor of Interwoven with respect to indirect infringement.

### c.  Exclusion of John Maly's Testimony

Interwoven moves to exclude the testimony of Maly as being based on insufficient facts and rank speculation, and as ignoring and misapplying foundational legal precepts.  Interwoven's challenge does not attack the competency or qualifications of Maly or his methodology, but rather the evidence on which his opinions are based.  It contends that, because the "Definitive Guide to Interwoven TeamSite," on which Maly relies, reflects an amalgamation of the various versions of the TeamSite product, Maly failed to compare the patent claims to any existing Interwoven product, in violation of the standards of reliability required by *Daubert*.  Whether or not the Guide on which Maly relied accurately reflects an actual Interwoven product in existence during the relevant period is disputed between the parties.[4]  If it is accurate, reliance on the Guide may well be appropriate.  The parties may present evidence of whether such reliance was appropriate to the jury, as the accuracy of the Guide goes to the weight, not the admissibility of Maly's conclusions.  Thus, exclusion of Maly's conclusions is not appropriate on this basis.

While the motion to exclude Maly's Report and testimony as it relates to infringement

---

[4] Vertical offers testimony from Dr. Clifford Kraft, a technical consultant employed by counsel for Vertical, that TeamSite is substantially as described in the Guide.  Dossas Decl. Ex. 4 ¶ 4.  As discussed below, the remaining portion of that sentence, "that it has not changed in any significant way" is similarly understood as a general discussion of how the accused product's functions have changed over time.  It does not indicate the absence of "significant" change with respect to the specific patented elements at issue in this case.

under the doctrine of equivalents is now moot, it bears noting that, in explaining his cursory

assessment of the doctrine, Maly stated, he "didn't have to do much research into equivalents,

it's just so close it didn't seem necessary."  Vakil Decl. Ex. B at 187-88.  Such analysis does not

rise to the level of reliability expected of an expert under the standards articulated by *Daubert*.

Interwoven's motion to exclude Maly's opinions with respect to indirect infringement is

similarly denied as moot.  Given the lack of foundation in Maly's declaration, and Vertical's

failure to point to any reliable evidence, the portion of Maly's testimony on indirect infringement

fails to meet the standards required for admissible evidence.  Indeed, Vertical's opposition does

not attempt to refute Interwoven's assertion that Maly's conclusory statement is unreliable.

> d.   *Motions to Strike related to John Maly's Expert Testimony*

Interwoven, in its reply, additionally argues that portions of John Maly's declaration must

be stricken, claiming these opinions were provided for the first time in connection with this

motion practice, after the close of expert discovery.  It argues Maly's declaration fails to qualify

as a supplemental expert report, as Vertical has not indicated the additional information was

obtained recently.  Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order

stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  Motions to strike, however, are generally disfavored.  *See e.g.*, *Reflex*

*Packaging, Inc. v. Lenovo (U.S.), Inc.*, C 10-01002 JW, 2011 WL 7295479 (N.D. Cal. Apr. 7,

2011) (denying motion to strike expert declaration in support of plaintiff's claim construction

positions).

While the exact language of paragraphs 91-97, relating to the construction of

"interchangeable," admittedly was not provided prior to this series of motions, Interwoven was

aware of Maly's general opinion on this matter, as his Expert Report, provided as an exhibit to

Interwoven's motion for summary judgment, contemplated the use of various "skins" and

"buttons" which Maly believed to meet the requirements of "interchangeability."  As a result, no

prejudice was suffered arising out of the added detail.

Interwoven also moves to strike paragraphs 78-89, regarding information obtained from

Clifford Kraft, a consultant for Vertical's outside counsel.  Interwoven asserts that, as Maly did

not participate in, supervise, or direct the inspections included in Kraft's report, he cannot rely on

the information.  Experts are, however, permitted to rely on hearsay evidence in coming to their

conclusions, so long as an expert in the field would reasonably rely on that information.  *See* Fed.

R. Evid. 703.  In paragraphs 78-89, Maly relates nothing more than facts obtained from Kraft.

Beyond faulting Maly for not having participated personally, Interwoven raises no concerns as to

the underlying reliability of the actions taken by Kraft.  As Maly worked closely with Vertical's

counsel, directing the actions of Vertical's witnesses with respect to the technical analysis of the

accused products, his lack of personal participation only gives rise to topics for cross

examination.  Maly's reliance on the conclusion of this non-expert goes to the strength of

Maly's overall conclusions.  It is for a jury to decide whether Maly acted reasonably in relying

on Kraft's assessment, without conducting his own testing of the products at issue.  **Accordingly,**

**Interwoven's motion to strike these portions of Maly's declaration must be denied.**

In a related request, Interwoven moves to strike portions of Kraft's declaration, as

Vertical never disclosed Kraft as an expert and never submitted his expert report.  To support

disregarding these statements, Interwoven relies on *Synthes et al v. Spinal Kinetics, Inc.*, C-09-

01201 RMW 2011 U.S. Dist. LEXIS 93093 (N.D. Cal. Aug. 19, 2011), in which a court in this

district excluded statements of a non-expert finding that, while the witness's legal experience

was extensive, his technical skills were limited to a B.S. and thus did not have the technical

expertise to opine on infringement and invalidity.  In contrast to *Synthes*, however, Kraft has not

provided opinions on the ultimate technology, but rather on the change in products offered by

Interwoven.  Kraft attended an inspection of the accused product with counsel for Interwoven at

the direction of Vertical's counsel.  Under Federal Rule of Evidence 701, lay witnesses may

provide opinions that are rationally based on their personal perception, helpful to the jury, and

not based on specialized knowledge. Fed. R. Evid. 701(a)-(c).  Thus not all opinion testimony is

improper.  Kraft states that the accused product "has not changed in any significant way."  If

"any significant way" is understood as being in reference to the claimed elements of the patented

technology, this statement would require some specialized knowledge of the technology and how it relates to the specific patents involved in this case, and would therefore be an inappropriate opinion by a lay witness.  However, if understood as a more general comparison of the functioning of the product based on Kraft's observations while inspecting it, this statement is appropriate.  As motions to strike are disfavored and the exact meaning of this brief statement is unclear, it will not be stricken.  Nevertheless, the statement must be understood as a general comparison, not an opinion that all versions of the accused product infringe on the patents-in-suit.

Interwoven also moves to strike portions of Aubrey McAuley's declaration, arguing it contains information irrelevant to the present motion and is untimely.   McAuley relates contact with two prior employees of Interwoven who had not been previously disclosed as persons with discoverable information.   Vertical insists it has not been able to contact these individuals who thus have not provided any discoverable information.  The references must nevertheless be stricken as irrelevant to the motion.  Patent Local Rule 3-1(h), requires disclosure of the basis of any willful infringement allegations in the infringement contentions.  Although McAuley's declaration itself does not provide any indication of willfulness or copying, Vertical uses this statement to imply such behavior.  This is improper, as Vertical has not previously disclosed a basis for willful infringement, and, as these individuals have not been available for interviews, any such allegations are mere speculation.  Thus, as the reference to these individuals serves no permissible purpose, it must be stricken.

B.  Damages

Upon proof of infringement, Title 35, Section 284 provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284 (1998).  Vertical offers expert testimony from Joseph Gemini to prove it is entitled to lost profits or, in the alternative, a reasonable royalty.

a.  Lost Profits

Whether lost profits are legally available is a question of law in the first instance.  *See Poly-Am. L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 1995).  Interwoven argues Vertical has not made the threshold showing that, "but for" Interwoven's alleged infringement, Vertical would have suffered the harm alleged.  In support of this argument, Interwoven relies on the Federal Circuit's statement that, "[t]o recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits."  *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).  The Federal Circuit, however, has made clear that "[a] showing under *Panduit* permits the reasonable inference that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to "but for" causation."  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).  Thus making a "but for" showing is not a threshold requirement, as Interwoven asserts, but rather a showing satisfied by establishing each of the four *Panduit* factors.  Those factors are: "(1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made."  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

Even under this test, however, Interwoven argues Gemini has failed to meet the threshold requirements for admissibility.  Again, Interwoven merely challenges the expert's conclusions, not his qualifications or methodology.  While susceptible to attack on cross-examination, Gemini's assumption that no acceptable non-infringing substitutes exist is sufficient to present a question of fact with respect to the second *Panduit* factor.  Gemini states he considered information contained in the evidence produced, the papers filed in the case, publicly available data, and information he learned during conversations with Luiz Valdero, the Chief Technical Officer[5] of Vertical in arriving at his conclusion that no acceptable noninfringing substitutes

---

[5] In this instance, Valdetaro is referred to as the Chief Operating Officer in Vertical's papers.  As his declaration states he is the Chief Technical Officer, it will be assumed that this reference was a typographical error.

For the Northern District of California

1    exist.  Dossas Decl. Ex. 7, ¶¶ 9-10.   As CTO, Valdetaro was a likely person to contact to obtain

2    the necessary information, not an "end-run" around the expert witness requirements of Rule

3    26(a), as argued by Interwoven.[6]  Valdetaro's status as an officer of Vertical does not necessarily

4    taint the source of information.  Indeed, should such taint be a concern, "[v]igorous cross-

5    examination, presentation of contrary evidence, and careful instruction on the burden of proof

6    are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*,

7    509 U.S. at 595.  This is, therefore, not a case in which the expert relies entirely on assumptions

8    and simplifications that are not supported by evidence.  *See Am. Booksellers Assn., Inc. v. Barnes

9    & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041-42 (N.D. Cal. 2001) (excluding expert's model

10   because it had too many assumptions and simplifications, resulting in speculative testimony on

11   damages).

12        With respect to the third *Panduit* factor, whether Vertical had the capacity to meet

13   demand, Interwoven notes that the Vertical had only at most twelve full time employees working

14   on SiteFlash, compared to Interwoven's staff of over 200 people in research and development

15   and another 180 in support and professional services.  Nevertheless, the Federal Circuit has

16   stated that "[w]hether a patentee sells its patented invention is not crucial in determining lost

17   profits damages" *Rite-Hite Corp.*, 56 F.3d at 1548.  While rare that a patentee may recover lost

18   profits without evidence of its own sales, *see id.*, that possibility remains open.  Whether Vertical

19   had the ability to increase production such that it could compete in the relevant market is

20   disputed.  A jury must decide whether it agrees that Vertical could reach such capacity.

21        To support its claim that it would have captured the full market value, Vertical must show

22   that Interwoven drove it out of a two-supplier market.  While Interwoven insists Vertical's

23   assumption of a two-supplier market is rank speculation, Vertical points out that its inability to

24   make any sales following the alleged infringement in 2004 supports the conclusion it was

25   subsequently unable to compete with Interwoven's product in the relevant market.  This assertion

26   raises a question as to whether Interwoven was responsible for pushing Vertical out of the

27

28   _____

     [6] As discussed *infra*, Valdetaro's declaration need not be stricken.

market.[7] As Vertical has satisfied the *Panduit* factors, it has made a *prima facie* showing of being entitled to lost profits. *Rite-Hite Corp.*, 56 F.3d at 1545.

Interwoven further argues that Gemini's use of a 26% profit rate is arbitrary and flawed, as it relies on a business plan prepared by a wholly-owned subsidiary of Vertical and was intended for a different company with different products. Any questions of bias as a result of obtaining essential information from a party agent, however, are suitable for the presentation of evidence and cross-examination. While the GIS business plan, on which Gemini relies, was never implemented, and thus not clearly indicative of real market results, it is the most relevant plan available on which Gemini could base his conclusions. It is dated just prior to the time the alleged infringement began and provides an indication of the expected profitability of products using a similar technology. Accordingly, the forecast of a 26% profit rate is permissible, subject to challenges presented by Interwoven's evidence and cross examination.

Vertical has proffered evidence, primarily in the form of expert testimony, demonstrating that it has met the four *Panduit* factors. Whether or not its showing is sufficient is a question of fact that must be determined by a jury. Similarly, the appropriateness of a 26% profit rate as calculated by Vertical's expert is a question of fact. Thus, summary judgment on the question of lost profits must be denied.

### b. Reasonable Royalty

"A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "[A] reasonable royalty analysis requires a court to hypothesize, not to speculate." *Id.* The correct measure of damages is a highly case specific and fact-specific analysis." *Hebert v. Lisle Corp.*, 99 F.3d 108, 1119 (Fed. Cir. 1996). Interwoven contends that Gemini failed to use the smallest salable patent practicing unit and instead applied the entire market value rule improperly. Vertical argues in response that the whole of Interwoven's

---

[7] Vertical also asserts that the other infringers it has identified do not make products similar to SiteFlash. Interwoven objects to this statement, made by Vertical's Chief Technical Officer Luis Valdetaro, but as discussed below, this general opinion need not be stricken.

1    TeamSite and LiveSite products use the patented technology, and thus a calculation based on

2    their total sales is appropriate.

3         Generally, a calculation of royalties must be assessed on the "smallest salable patent-

4    practicing unit." *LaserDynamics, Inc. v. Quanta Computer, Inc*, 694 F.3d 51, 67 (Fed. Cir.

5    2012).  The entire market value rule is permitted only where the "patented feature creates the

6    'basis for customer demand' or 'substantially create[s] the value of the component parts.'"

7    *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (internal citations

8    omitted).  "It is not enough to merely show that the [patented feature] is viewed as valuable,

9    important, or even essential."  *Laser Dynamics*, 694 F.3d at 68 (Fed. Cir. 2012).  If the patentee

10   cannot satisfy the entire market value rule, then the patentee "must in every case give evidence

11   tending to separate or apportion the defendant's profits and the patentee's damages between the

12   patented feature and the unpatented features, and such evidence must be reliable and tangible,

13   and not conjectural or speculative."  *Uniloc*, 632 F.3d at 1318.

14        Interwoven argues the smallest salable unit is, at most, the component within TeamSite

15   that corresponds to SitePublisher because, the latter was sold as an add-on option to a version of

16   TeamSite available before the patents-in-suit were issued, and only later bundled into

17   Interwoven's product.  Despite this development history, Vertical adopts the total revenue of

18   TeamSite and LiveSite product sales as its revenue base.  In support of its calculation, Vertical

19   points to advertising material that it claims show the allegedly infringing features drive consumer

20   demand, as well as Valdetaro's statements on the subject.  On occasion, courts have permitted

21   evidence of the entire market rule to be presented in reliance on articles showing that the

22   patented feature was important to the defendant's ability to compete in the market.  *See, e.g.*,

23   *DataQuill Ltd. v. High Tech Comp. Corp.*, 887 F.Supp.2d 999, 1027-28 (S.D. Cal. 2011)

24   (allowing Gemini to present evidence of entire market analysis).  In *DataQuill* the court found

25   that the patent claimed an entire invention, not merely a component part.  While Gemini's

26   reliance on marketing materials and conversations with Valdetaro to support the conclusion that

27   the whole of Interwoven's products use the patented technology is relatively weak, it is sufficient

28

For the Northern District of California

to present a question of fact as to the extent of the use of patented features.  A jury must find whether the patented feature drove consumer demand such that application of the entire market value is appropriate.

Interwoven goes on to argue that Vertical cannot rely on the Basix1 Agreements to derive a reasonable royalty rate, as the Agreements are not sufficiently comparable either technologically or economically.  Specifically, Interwoven asserts the agreements contemplated re-bundling and co-marketing arrangements between related parties that intended to work cooperatively with one another over a period of time, but that no payment was ever made under the agreements rendering them an inadequate reflection of an actual market.  *LaserDynamics*, which holds that a reasonable royalty based on "loose or vague" comparisons to existing licenses must be excluded is distinguishable from the present case.  694 F.3d at 79.  In *LaserDynamics* the expert had ignored many licenses expressly for the patent in issue in favor of a license somewhat removed from the relevant technology.  *Id.* at 80.  Here, by contrast, there is no evidence that any license for the exact patents-in-suit was negotiated but not considered.  Rather, Gemini based his conclusions on what he thought to be the best evidence available to him.  These licensing agreements were entered during the same time period and dealt with the technology using the patents-in-suit.  Thus, relying on the Basix1 Agreements as a starting point for determining a reasonable royalty rate was not precluded as a matter of law.  Moreover, while relatively cursory, Gemini does acknowledge the reasons why a hypothetical license for the patents-in-suit would differ from that negotiated in the Basix1 Agreements.  *See* Dossas Decl. Ex. 7 at ¶¶ 44-49.  For example, Gemini recognizes that the parties were related, but relies on Valdetaro's representation that the transaction was conducted at arms-length.  He also recognizes that a downward adjustment would be required, as the Basix1 agreements contemplated a license more broad that the patents-in-suit, and a volume of sales that was expected to be less than that for TeamSite.  Gemini also referenced, and distinguished, the settlement agreement Vertical entered into with Microsoft.  *See id.* at ¶¶ 42-43.  These comparisons indicate Gemini underwent a thorough analysis of the factors involved in connection with each license agreement.  Any

For the Northern District of California

1    concern as to the degree of comparability between an existing and hypothetical license may be

2    addressed through cross-examination.  *ActiveVideo Networks v. Verizon Communications*, 694

3    F.3d 1312, 1333 (Fed. Cir. 2012).

4         Vertical has presented a question of fact as to the extent the patented technology

5    allegedly drove consumer demand for Interwoven's products.  A calculation of reasonable

6    royalty based on the Basix1 Agreements was not improper as a matter of law.  Accordingly,

7    Interwoven's motion for summary judgment must be denied with respect to reasonable royalty.

8              *c.  Exclusion of Joseph Gemini's Expert Testimony*

9         Interwoven asserts that Gemini's opinions regarding lost profits are unsupported and

10   unreliable speculation.   As discussed above with respect to summary judgment, **Gemini**

11   appropriately applied the test from *Panduit Corp. v. Stalin Bros. Fibre Works, Inc.*, 575 F.2d

12   1152 (6th Cir. 1978), and the factors set forth in *Georgia Pacific Corp. v. United States Plywood*

13   *Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970).  Any disagreement Interwoven has with Gemini's

14   conclusions on lost profits is an issue of fact, not suitable for a *Daubert* motion.

15        Interwoven also attacks Gemini's analysis of a reasonable royalty.   As discussed above,

16   however, reliance on the Basix1 Agreements was not inappropriate as a matter of law, and

17   Gemini adequately considered adjustments of the royalty rate for this case.  Accordingly, his

18   opinions on reasonable royalty need not be excluded.  Any challenges to his conclusions or the

19   facts on which they are based are best saved for cross-examination.  Interwoven's motion to

20   exclude Gemini's expert testimony is denied.

21             *d.  Motion to Strike Declaration of Luiz Valdetaro*

22        In its Reply, Interwoven moves to strike portions of Valdetaro's declaration as improper

23   expert opinion submitted by a lay witness.  These paragraphs provide his opinion on the

24   similarities between Vertical's product and that of other companies, including Interwoven.  As

25   previously discussed, Federal Rule of Evidence 701 does not preclude all opinion testimony by

26   lay witnesses.  It does, however, preclude opinions based on specialized knowledge.  The cases

27   on which Interwoven relies in support of its motion, however, involve specialized knowledge to

28

For the Northern District of California

a considerably higher degree of precision than the opinions at issue here.  In *Fresenius Med.*
*Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330002 (N.D. Cal. May 15, 2006), a court in
this district struck portions of a declaration that compared features of the accused product to
specific elements in the patent.  *Id.* at *3.  Similarly, in *Sitrick v. Dreamworks,LLC*, 2006 WL
6116641 (C.D. Cal. July 20, 2006), a district court found that comparisons between the
functionality of the accused product and the inventor's own product were factual statements
based on personal knowledge.  *Id.* at 22.  That court, however, struck a specific statement
regarding the outcome of replacing a feature within the accused product as crossing over into the
domain of expert testimony.  *Id.* at 22 n.9.

Valdetaro, as the Chief Technical Officer of Vertical, has extensive personal experience
regarding the functionality of the SiteFlash product.  The opinions he provides are admittedly
vague and unspecific.  For example, he opines that the SiteFlash product is "much different"
from that sold by Microsoft, that the Interwoven product "infringes the patents-in-suit" and that
the accused product "provides virtually the same functionality" as the patented product.  These
conclusions are, nonetheless, based on his personal observations and knowledge as a result of his
position at Vertical.  They are not so specific as to require technical or other specialized
knowledge in violation of Federal Rule of Evidence 701.  Moreover, as motions to strike are
generally disfavored, *see Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718
F.Supp.2d 1167, 1170 (N.D. Cal. 2010) (citing *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063
(8th Cir. 2000)), any doubt as to the propriety of a statement should be resolved in favor of the
party opposing the motion.  Accordingly, Interwoven's motion to strike portions of Valdetaro's
declaration is denied.

## V.   CONCLUSION

For the foregoing reasons, Interwoven's motion for summary judgment with respect to
infringement is granted in part and denied in part.  Interwoven's motion for summary judgment
on damages is denied, as is its motion to exclude Joseph Gemini's testimony on that issue.
Interwoven's motion to exclude John Maly's testimony on infringement is granted in part and

denied in part.  Interwoven's motion to strike portions of John Maly's declaration is denied, as is Interwoven's motion to strike portions of Aubrey McAuley's declaration.  Interwoven's motion to strike portions of the declarations of Clifford Kraft and Luis Valdetaro is also denied.

A further Case Management Conference shall be held on September 26, 2013.  The parties shall file a joint case management statement at least one week prior to that conference.

IT IS SO ORDERED.

Dated:  7/18/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE