IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERWOVEN, INC., | No. CV 10-04645 RS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING MOTION FOR SUMMARY JUDGMENT, GRANTING ADMINISTRATIVE MOTION TO FILE UNDER SEAL, AND GRANTING IN PART MOTION TO STRIKE VALDETARO DECLARATION** |
| v. | |
| VERTICAL COMPUTER SYSTEMS, | |
| Defendant. | |

## I.   INTRODUCTION

Interwoven, Inc. ("Interwoven") initiated this case seeking a declaratory judgment that the 6,826,744 ("the '744 patent") and 7,716,629 ("the '629 patent") patents held by Vertical Computer Systems ("Vertical") are invalid and unenforceable, or that no valid, enforceable claim within the patents-in-suit is infringed by plaintiff's software. Vertical then filed a counterclaim of infringement, which is the subject of the instant motion for summary judgment.

Interwoven previously moved unsuccessfully for summary judgment of the counterclaim on the basis of inequitable conduct and the on-sale bar. Interwoven again moved for summary judgment in May 2013. That motion was granted in part, as to the issues of infringement through the doctrine of equivalents and indirect infringement, and denied in part as to the issue of direct infringement and the availability of damages. That order further granted in part and denied in part Interwoven's motion to exclude testimony by Vertical's technical expert, John Maly, and denied a similar motion to exclude testimony by Joseph Gemini on the issue of damages.

Interwoven was granted leave to file one final motion for summary judgment limited to the issue of direct infringement. In addition to that issue, Interwoven further moves for summary judgment as to damages and moves to strike portions of the declaration of Luis Valdatero submitted in opposition to this motion. As explained below, Interwoven's motion for summary judgment is granted in part as to the issue of lost profits damages, but must otherwise be denied. Its motion to strike is granted in part and denied in part.

## II.   BACKGROUND

Much of the factual background of this case has been discussed in the orders concerning Interwoven's two prior sets of motions for summary judgment. In brief, this case concerns Interwoven's alleged infringement of both method and system claims. The technology in this matter involves a system for generating software applications in an "arbitrary object framework" that involves creating, interchanging, and managing arbitrary objects. The 2011 Claim Construction Order in this case defined an "arbitrary object" as "an object that can be created independently by individual preference, are interchangeable, and that may be, but need not be, accessed solely by name, the object being an entity that can have form, content, or functionality or any combination of form, content and functionality." (Dkt. No. 83 at 17–18.) Vertical accuses Interwoven's products, basic TeamSite and TeamSite with LiveSite (collectively, "TeamSite"), of infringement. The parties agree that TeamSite is a software product without any hardware structure.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 323.  A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party and that could affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Id.* at 255.

### IV.   DISCUSSION

A. Direct Infringement of the Method Claims of the '744 Patent

To prove direct infringement with respect to method claims, the patentee must show the accused infringer performed all of the steps in the claimed method.  *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012).  "[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).  Interwoven's prior motion for summary judgment argued Vertical was unable to show that any of the elements found in TeamSite are arbitrary objects that are interchangeable with objects of different types, consistent with Interwoven's proposed clarification of the claim construction terms.  The court adopted Interwoven's proposed clarification, finding that, "while not necessary that an arbitrary object be replaced with an object of a different type in every instance, the claimed language requires that a product falling within the reach of the patent have the *capacity*, but is not required, to exchange one arbitrary object for an object of another type." (Dkt. 191 at 7 (original emphasis).)  Nevertheless, Interwoven's prior motion for summary judgment on direct infringement was denied based on a declaration from Vertical's technical expert that TeamSite

had the ability, among other things, to create "buttons" of different object types that may be interchanged in the TeamSite software. (Dkt. 191 at 8.) Whether or not TeamSite actually has the ability to create buttons, and whether such buttons satisfy the definition of "interchangeable," remains a question of fact to be submitted to the jury. *Id*.

Interwoven now argues Vertical cannot show Interwoven actually performed all the steps of the asserted method claims of the '744 patent. According to Interwoven, even if TeamSite is capable of infringement, there is no evidence that Interwoven ever operated TeamSite in an infringing manner. In response, Vertical points to circumstantial evidence suggesting that Interwoven employees necessarily performed each step of the method claims in order to develop, test, document, and market TeamSite.[1]

"Direct infringement can be proven by circumstantial evidence." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009). Here, Vertical's circumstantial evidence of direct infringement and expert opinion testimony regarding the method claims are sufficient to present a genuine issue of material fact as to whether Interwoven practiced each step of the method claims. For example, Vertical's technical expert reviewed documentation from Interwoven, including user guides for various versions of TeamSite, and offered his opinion that the documentation not only showed TeamSite literally infringed each step of the method claims (Maly Depo. Tr., ECF No. 199-1, 118:24–122:8), but also that the documentation could not have been created without someone at Interwoven performing each step of the method claims. (*Id.* 197:15–199:15.) Maly further opined that the infringing functionality was core to the TeamSite product (*id.* 199:22–200:3) and that "because a typical customer is obviously going to expect this functionality," Interwoven's testing department must have practiced the method steps in order to test and verify that very attribute. (*Id.* 198:12–15.) Such circumstantial evidence and expert

---

[1] In the alternative, Vertical suggests that TeamSite automates each step of the claimed method and, therefore, Interwoven infringes the method claims any time the software is run. According to its technical expert, "the actual operational steps themselves are performed by TeamSite. TeamSite specifically automates all these operational steps such that the user can avail themselves of it . . . ." (Dep. Tr. of John Maly, Exh. F, at 9.) This order addresses the first alleged grounds for infringement, which is sufficient to resolve the instant motion for summary judgment.

testimony triggers a plausible inference that Interwoven practiced each step of the method claims; a sufficient showing to survive summary judgment.

In *Lucent*, the Federal Circuit found similar circumstantial evidence adequate to support a jury finding of direct infringement. 580 F.3d at 1317–20. The accused infringer, Microsoft, distributed software with a calendar tool that, when used, infringed the patentee's method claims. *Id.* at 1317. Although the patentee's only direct evidence of infringement was its own expert's use of that tool, the Federal Circuit noted the jury also "reviewed evidence relating to the extensive sales of Microsoft products and the dissemination of instruction manuals for the Microsoft products." *Id.* at 1318. Based on this evidence, the Federal Circuit held the jury "could have reasonably concluded that, sometime during the relevant time period from 2003 to 2006, more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products." *Id.*; *see also Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364–66 (Fed. Cir. 2012).

The cases upon which Interwoven relies are not to the contrary. For example, the Federal Circuit in *Mirror Worlds* affirmed the district court's judgment of non-infringement as a matter of law. 692 F.3d at 1353. The accused infringer, Apple, sold a computer operating system that included an application called Spotlight. *Id.* at 1355–56. At trial, the patentee introduced a video of Apple's former CEO, Steve Jobs, demonstrating Spotlight in January 2005 and evidence Apple tested Spotlight in 2004. *Id.* at 1359. Unlike the record in this case, in *Mirror Worlds* there was no evidence that the version of the product used in the demonstration and testing infringed the patentee's method claim. The patentee's own damages expert testified that "the only evidence of an infringing product is the product that was released to the public in April 2005." *Id.* The patentee provided "no other evidence or testimony . . . that would justify an assumption by the jury that the [Spotlight] version used in Jobs' January 2005 presentation or Apple's internal testing was indeed an infringing version . . . ." *Id.* Here, Maly reviewed documentation regarding specific versions of TeamSite to conclude that Interwoven infringed the

method claims in the course of developing both the documentation and software itself related to those specific versions.

Interwoven similarly relies on *E-Pass Technologies, Inc. v. 3Com Corp.*, in which the Federal Circuit upheld a finding of summary judgment of no *induced* infringement. 473 F.3d 1213, 1221–23 (Fed. Cir. 2007). In that case, the Court held that evidence including product manuals for various of the accused devices was insufficient to support a finding that the defendant had induced infringement of the claimed method, which required a number of steps to be performed in a particular order. The court explained, "[T]he evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order. Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method." *Id.*, at 1022. Unlike *E-Pass*, Vertical's expert points to Interwoven's documentation as reflecting its own practice of each step of the method claim. Under its theory of direct infringement, Vertical need not show that any of Interwoven's customers followed those instructions or that they did so in any particular order. As noted above, Maly's testimony identifies sufficient circumstantial evidence to raise a genuine issue of material fact as to whether Interwoven practiced each step of the method claims.

B. <u>Direct Infringement of the System Claims of the '629 Patent</u>

Interwoven next argues that Vertical has not presented evidence of direct infringement of the system claims of the '629 patent. As explained below, Vertical presents sufficient circumstantial evidence to overcome this challenge.

*1. Preamble Language*

As a threshold matter, Interwoven insists the system claims of the '629 patent all require hardware components, specifically, "a computer comprising a processor and a memory operably coupled to said processor," as provided for in the claims preamble. As the parties agree TeamSite does not include such a hardware component, Interwoven argues, Vertical cannot show that it infringes the '629 claims.

United States District Court
For the Northern District of California

"Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). However, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Here, Interwoven offers evidence from the prosecution history of the '629 patent tending to show the patent applicant added this language to overcome the examiner's rejection under 35 U.S.C. § 101. (*See, e.g.,* Interwoven's Exh. D at 6, 13.) Based on this history, uncontested by Vertical, it is correct to read the preamble here as limiting the scope of the system claim. As such, the asserted claims of the '629 patent must be read as limited by the hardware component provision of the preamble: ". . . said system including a computer comprising a processor and a memory operably coupled to said processor."

*2. System Claims*

According to Interwoven, it would be impossible for the company to infringe the asserted system claims directly by making, offering to sell, selling, or importing into the United States the accused software products because TeamSite does not contain any hardware components. In fact, according to Interwoven, Vertical has admitted that if hardware components are required by the asserted system claims, there can be no direct infringement. (*See* Vertical's Opp. to Mot. to Exclude Maly Testimony, Dkt. No. 178, at 11 ("Even if such [hardware] components were part of the invention (and they clearly are not), Interwoven would still be an infringer indirectly, because the accused products cannot run on anything except a computer.").) However, a legal argument that Interwoven committed indirect infringement by supplying an infringing software product to run on third-party hardware is not the same as an admission that Interwoven itself never used the allegedly infringing TeamSite software in a manner directly infringing upon the '629 system claims.

Vertical contends Interwoven "uses" the claimed system (including the hardware components described in the preamble) throughout the process of testing, training, servicing and installing TeamSite because all such activities inferentially occur while TeamSite is installed on a computer.  In addition, Vertical argues Interwoven "makes" the infringing system under 35 U.S.C. § 271(a) when it (1) installs the TeamSite system on a customer (or its own) computer or (2) hosts the customer's system because it thereby "combines" all of the elements of the asserted claims of the '629 patent.  In support of these claims, Vertical points to the same evidence offered above concerning to the '744 patent to show that Interwoven must have installed and used TeamSite at various times to develop, test, document, and sell TeamSite.

Interwoven does not take issue with the justifiable inference that, at various time during the development and sales process, its allegedly infringing software was coupled with the necessary hardware components.  As above, while the burden will be on Vertical at trial to show actual use by Interwoven of the asserted system, deposition testimony from Maly and Rajib Sengupta, Interwoven's Rule 30(b)(6) representative (Dossas Decl., Exh. C (filed under seal))[2] is sufficient at present to raise a genuine issue of material fact as to whether Interwoven practiced the system as well as the method claims in the course of testing, training, servicing, and installing TeamSite on either its own hardware or that of its customers.  On that basis, Interwoven's motion for summary judgment of no direct infringement of the '629 patent must be denied.

C.  <u>Damages</u>

Interwoven further moves for summary judgment on the issue of damages, arguing Vertical does not offer sufficient evidence upon which a reasonable damages calculation might rest.  The proposed testimony of Vertical's damages expert, Joseph Gemini, was the subject of a prior motion for summary judgment and motion to strike, both resolved in Vertical's favor.

---

[2] While Interwoven's declaration in support of Vertical's administrative motion to file under seal specific documents previously designated by Interwoven as "highly confidential" was somewhat conclusory, it is sufficient to provide a basis to conclude the material qualifies for under seal submission at this juncture.  The motion is hereby granted with respect to Exhibits C, D, H, I, L, and M.  It is denied as to Exhibit J, which Interwoven has subsequently de-designated.

(Dkt. 191.)  In denying Interwoven's prior motion for summary judgment on the issue of damages, the prior order found that Vertical had satisfied the four *Panduit* factors and therefore advanced a *prima facie* showing it was entitled to lost profits.  (Dkt. 191 at 17 (citing *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).)  The order further concluded that Vertical had presented a question of fact as to the extent the patented technology allegedly drove consumer demand for Interwoven's products and that a calculation of reasonable royalty based on the Basix1 Agreements was not precluded as a matter of law.  (*Id.* at 18–20.)  Accordingly, Interwoven's motion for summary judgment was denied with respect to damages.

While denying summary judgment as to damages, the prior order also substantially limited Vertical's case for infringement to Interwoven's own use of the asserted method or system claims.  Gemini provides no causal connection between any alleged lost profits to Vertical and Interwoven's own use of the asserted method or system claims.  The bare assertion by Interwoven's Sengupta that the company's sale process—including product demonstrations that Maly opines must be infringing—leads to eventual sales simply does not provide a reasonable, non-speculative basis upon which to calculate an award of lost profits.

At the same time, Vertical's failure to present a triable issue as to lost profits does not entirely foreclose the availability of damages.  Upon proof of infringement, 35 U.S.C. § 284 provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  "In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated."  *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty," even in the absence of expert testimony.  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003) (finding error where the district court concluded that no damages could be awarded where the plaintiff failed to present expert

1  testimony on the issue). In the event a patentee proves infringement but fails to meet its burden
2  to prove damages, "the district court should consider the so-called *Georgia-Pacific* factors (*Ga.-*
3  *Pac., Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)) in detail,
4  and award such reasonable royalties as the record evidence will support." *Dow Chem Co.*, 341
5  F.3d at 1382. Despite this rule, the burden remains on the patentee to present evidence of
6  damages, and failure to do so may lead the court to a reasonable royalty of zero. *See Lindemann*,
7  895 F.2d at 1407 (citing favorably a Third Circuit decision affirming an award of zero damages
8  for lack of evidence). *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343 (Fed. Cir.
9  2000), is not to the contrary. Although the Federal Circuit reversed the district court's award of
10 direct damages based on lost profits where the only evidence of direct infringement was the
11 appellant's tests in preparation for sale, it then remanded for the district court to calculate a
12 reasonable royalty. *Id.* at 1350.

13       In light of the statutory presumption of damages upon a finding of infringement, there is
14 no basis to grant summary judgment on the issue of damages with the understanding that
15 Vertical will be limited to the assessment of a reasonable royalty. Although Gemini's proffered
16 reasonable royalty calculation again relies on Interwoven's total sales revenue from TeamSite (as
17 did his lost profits calculation), his analysis of similar licensing agreements and application of
18 the *Georgia-Pacific* factors provides some thin basis upon which a reasonable royalty might be
19 calculated. Vertical should be mindful, however, of the Federal Circuit's caution that while 35
20 U.S.C. § 284 "obviates the need to show the fact of damage when infringement is admitted or
21 proven, . . . that does not mean that a patentee who puts on little or no satisfactory evidence of a
22 reasonable royalty can successfully appeal on the ground that the amount awarded by the court is
23 not 'reasonable.'" *Lindemann*, 895 F.2d at 1407.

24 D. <u>Motion to Strike Declaration of Luz Valdetaro</u>

25       Finally, Interwoven moves to strike the January 7, 2014 declaration of Luz Valdetaro,
26 Vertical's Chief Technical Officer. According to Valdetaro, Interwoven's product "as described
27 in *The Definitive Guide to Interwoven TeamSite* . . . provides virtually the same functionality as
28

1  [Vertical's] SiteFlash platform; and it is the only competition for the SiteFlash product."
2  (Dossas Decl., Dkt. No. 240, Exh. G, ¶ 6.)  Valdetaro further states, "*The Definitive Guide to*
3  *Interwoven TeamSite* shows that Interwoven markets, installs, maintains and tests the TeamSite
4  product the exact same say [sic] that Vertical performs those services." (*Id.* ¶ 9.)  Valdetaro
5  lacks personal knowledge of these matters to the extent he offers testimony about Vertical's
6  product capabilities and installation based solely on a third-party publication.  Furthermore,
7  Vertical has not put forward Valdetaro as an expert in this matter.  On that basis, Interwoven's
8  motion to strike is granted as to paragraphs 6 and 9 of Valdetaro's declaration.  Interwoven does
9  not suggest Valdetaro lacks personal knowledge, as Vertical's Chief Technology Officer, as to
10 the remainder of his declaration concerning Vertical's own technology.

## V.   CONCLUSION

For the foregoing reasons, Interwoven's motion for summary judgment is granted with respect to lost profits damages but is otherwise denied.  Vertical's administrative motion to file under seal is granted.  Interwoven's motion to strike the declaration of Luz Valdetaro is granted in part.

IT IS SO ORDERED.

Dated: 2/3/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE